## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael D. Olsen, Personal Representative of the Estate of Tamara Hjelle Olsen,<br><br>          Plaintiff,<br><br>v.<br><br>Standard Insurance Company,<br><br>          Defendant. | Civil No. 13-CV-576 (SRN/TNL)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

John M. Nichols and Gregory R. Merz, Gray, Plant, Mooty, Mooty & Bennett, P.A., 80 South 8th Street, Suite 500, Minneapolis, Minnesota 55402, for Plaintiff.

Terrance J. Wagener and Molly R. Hamilton, Messerli & Kramer, P.A., 100 South 5th Street, Suite 1400, Minneapolis, Minnesota 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.      INTRODUCTION

This matter is before the Court on the parties' cross-motions for summary judgment.

For the reasons stated below, the Court grants Defendant's Motion for Summary Judgment [Doc. No. 30] and denies Plaintiff's Motion for Summary Judgment [Doc. No. 36].

## II.     BACKGROUND

### A.      The Life Insurance Policy

Defendant Standard Insurance Company issued Group Life Insurance Policy No. 148624-A (the "Policy") to the law firm of Gray, Plant, Mooty, Mooty & Bennett, P.A.

("Gray Plant") on January 1, 2010.  (Haines Aff., Ex. A [Doc. No. 27], at 6.)[1]  The Policy

provided for maximum basic life insurance coverage of $100,000.  (Id. at 12.)  In December

2010, Gray Plant requested an increase to $500,000 in basic life insurance for Principals of

the firm.  (Id. at 195.)  The requested amendment, which was "subject to the Active Work

Provisions," became effective on January 1, 2011.  (Id. at 3.)  The Active Work provisions

state:

> If you are incapable of Active Work because of Sickness, Injury or Pregnancy on the day before the scheduled effective date of your insurance or an increase in your insurance, your insurance or increase will not become effective until the day after you complete one full day of Active Work as an eligible Member.
>
> Active Work and Actively At Work mean performing the material duties of your own occupation at your Employer's usual place of business.  You will also meet the Active Work requirement if:
>
> 1. You were absent from Active Work because of a regularly scheduled day off, holiday, or vacation day;
>
> 2. You were Actively At Work on your last scheduled work day before the date of your absence; and
>
> 3. You were capable of Active Work on the day before the scheduled effective date of your insurance or increase in your insurance.

(Id. at 28–29.)  Under the Policy:

---

[1]     Defendant submitted the Affidavit of Sara Haines [Doc. No. 27] in support of its motion for summary judgment.  Ms. Haines is a Benefits Review Specialist for Defendant.  (Haines Aff. ¶ 1.)  Attached as Exhibit A to Ms. Haines' Affidavit is the administrative record compiled by Defendant during its administration of Plaintiff's claims for life insurance and long-term disability benefits.  (Id. ¶ 3.)  Both parties rely upon this record in their recitation of the facts.  The administrative record is numbered sequentially, beginning with STND 13-01669-00001.  However, the Court will omit all but the final numerical digits from its citations to the page numbers.

You are a Member if you are:

1.    An active Partner or shareholder or employee of the Employer excluding Counsel and Principal Emeritus; and

2.    Regularly working at least 20 hours each week.

You are not a Member if you are:

1.    A temporary or seasonal employee.

2.    A leased employee.

3.    An independent contractor.

4.    A full time member of the armed forces of any country.

(Id. at 10.)  The Policy grants Defendant "full and exclusive authority to control and manage the Group Policy, to administer claims, and to interpret the Group Policy and resolve all questions arising in the administration, interpretation, and application of the Group Policy."  (Id. at 39.)

### B.    Plaintiff's Claim for Benefits

Tamara Olsen was employed at Gray Plant beginning in 1986 and, at all times relevant to this lawsuit, was a Principal and Shareholder of the firm.  (Id. at 130, ¶ 4.)  She became the firm's Managing Officer and Chair of the Board of Directors in April 2007. (Id.)  Ms. Olsen was diagnosed with cancer in August 2010 and was treated through surgery, radiation, and chemotherapy in the months that followed.  (Compl. ¶ 14.)

On February 16, 2011, Ms. Olsen submitted a claim for long-term disability benefits. (See Haines Aff., Ex. A, at 707–11.)  In the "Employee's Statement," Ms. Olsen listed August 21, 2010 as the "[d]ate [she] became unable to work at [her] occupation as a result

of disability." (Id. at 709.)  In the "Employer's Statement," Gray Plant listed Ms. Olsen's

"[l]ast day of work before disability commenced" as August 20, 2010, but noted that Ms.

Olsen "had two full days of work since then, October 25, 2010 [and] January 10, 2011."

(Id. at 714.)  Gray Plant also stated that "Claimant is Firm's managing partner.  She will

utilize remote access and other alternatives when and if she is able." (Id.)  On March 23,

2011, Defendant approved Ms. Olsen's claim.  (Id. at 671–72.)

Ms. Olsen remained the Managing Officer at Gray Plant until April 14, 2011.  (Id. at

130, ¶ 4.)  As the Managing Officer, one of her job duties was to supervise the development

and implementation of Gray Plant's new strategic plan.  (Id. ¶ 8.)  She attended meetings of

the firm's Strategic Planning Committee on January 10, 2011, and April 12, 2011.  (Id. ¶ 7.)

Gray Plant's records reflect that Ms. Olsen was in Gray Plant's offices for at least eight

hours on each of those days.  (Id. at 134, 142.)  In addition, Ms. Olsen continued in her role

as Chair of the Board of Directors and maintained an office at the firm's Minneapolis

location until her death on July 4, 2011.  (Id. at 134, ¶ 4.)

On August 24, 2011, Gray Plant submitted a claim for life insurance benefits on

Plaintiff's behalf.  (See id. at 348–49.)  Gray Plant asserted that Ms. Olsen was covered by

the basic Policy in the amount of $500,000 and enclosed copies of her time records to

demonstrate that she had been "actively at work" several times between January 1, 2011,

and June 30, 2011.  (Id. at 348.)  Defendant found that Plaintiff was entitled to $100,000 in

basic life insurance, but not to the additional $400,000.  (See id. at 51, 337.)  By letter dated

October 5, 2011, Defendant explained that, "while Ms. Olsen was at work after January 1,

2011, the Group Policy states that one must 'complete one full day of Active Work as an

eligible Member.'"  (Id. at 52–53.)  According to Defendant, "Ms. Olsen ceased to be a

Member on August 21, 2010, given that she no longer regularly worked 20 hours each

week."  (Id. at 52.)  In addition, Defendant asserted that "Ms. Olsen continued to meet the

definition of Totally Disabled from August 21, 201[0], until she died, because she was

unable to perform the material duties of her job with reasonable continuity."  (Id. at 53.)

Therefore, Defendant reasoned:

> Because Ms. Olsen ceased to be a Member and was Totally Disabled from
> August 21, 2010, from which time, until the date of her death, she was
> covered under Waiver Of Premium, she did not meet the Active Work
> Requirement when she completed one full day of work on January 10, 2011,
> or on any date thereafter.  Consequently, she did not become eligible for the
> new coverage amount of $500,000 for Principals/ Shareholders (Amendment
> 1).  Rather her coverage continued under Waiver Of Premium was $100,000:
> her Plan 1 Life Insurance on the day before she became Totally Disabled in
> August, 2010.

(Id.)

On February 7, 2012, Plaintiff requested a review of Defendant's decision pursuant

to the Policy's claims procedure and ERISA.  (Id. at 124.)  Plaintiff disputed Defendant's

interpretation of the "eligible Member" requirement, arguing that "the 20-hour per week

requirement is not about counting past hours or trying to predict future hours," but rather

"[i]t is strictly a status determination."  (Id. at 127.)  According to Plaintiff, "[t]he Policy has

two classes of Employees:  twenty-hour a week Employees and less than [twenty]-hour a

week Employees, i.e., full time or part time.  A full time Employee is an eligible Member; a

part time Employee is not."  (Id.)  Plaintiff argued that Ms. Olsen was a full-time employee

when she completed her work on January 10 and April 12, 2011, and, therefore, she had

satisfied the Active Work provisions of the Policy.  (Id. at 128.)  Plaintiff further argued that

Defendant's determination that Ms. Olsen was disabled for purposes of the Waiver of Premium benefit (i.e., a disability benefit) was not relevant to a determination of life insurance benefits—"[t]here is nothing inconsistent with an Employee being entitled to disability or waiver of premium benefits and at the same time being entitled to increased life insurance benefits under a different section of the Policy." (Id.)

By letter dated June 20, 2012, Defendant affirmed its earlier denial of the additional $400,000 in life insurance benefits. (See id. at 165–74.) Defendant stated that, while Ms. Olsen may have completed two full days of work after January 1, 2011, she did not do so as "an eligible Member, which requires a Principal/Shareholder to be regularly working at least 20 hours each week." (Id. at 171.) Rather, Defendant found that "Ms. Olsen ceased to be a Member beginning August 21, 2010" because "[she] was not capable of working the number of hours required to meet the Definition of Member from that time." (Id.) Defendant noted that, upon receipt of the denial, Plaintiff had exhausted all administrative remedies under the Policy. (Id. at 173.)

### C.    Plaintiff's Claims

Plaintiff Michael Olsen, Personal Representative of the Estate of Tamara Hjelle Olsen, filed the Complaint in this matter on March 13, 2013 [Doc. No. 1]. Plaintiff asserts three claims against Defendant. In Count I, Plaintiff alleges that Defendant has failed, and continues to fail, to provide the benefits due under the terms of the Policy in the amount of $400,000, and that Plaintiff is entitled to enforce the rights to those benefits pursuant to the Employee Retirement Income Security Act ("ERISA"), codified at 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶¶ 18–20.) In Count II, Plaintiff alleges that Defendant breached

its fiduciary duties to the plan and to Plaintiff by failing to discharge its duties solely in the interest of plan participants and beneficiaries under § 1104(a)(1)(A), and in accordance with the plan documents under § 1104(a)(1)(D).  (Id. ¶¶ 21–23.)  Therefore, Plaintiff seeks payment of those benefits, along with interest, and equitable relief under § 1132(a).  (Id. ¶¶ 24–25.)  Finally, in Count III, Plaintiff alleges that Defendant's denial of benefits is properly reviewed under a de novo, rather than an abuse of discretion, standard.  (Id. ¶¶ 26–27.)  Plaintiff seeks an award of $400,000 in life insurance benefits, pre-judgment interest from the date of death until the date of payment, and reasonable attorney's fees and costs under § 1132(g)(1).  (Id. at 8.)

## III.    DISCUSSION

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'"  Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).  Summary judgment is proper if, drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Celotex Corp., 477 U.S. at 322–23; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50, 255 (1986).  The party moving for summary judgment bears the burden of showing that the material facts in the case are undisputed.  Celotex Corp., 477 U.S. at 323.  However, "a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of

his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256.

In this case, the parties agree that the material facts are undisputed and that resolution of the case turns on the interpretation of the Policy's "Active Work" provision. (See Pl.'s Mem. in Supp. of Mot. for Summ. J. [Doc. No. 38] ("Pl.'s Mem.") at 5; Def.'s Mem. of Law in Opp. to Pl.'s Cross-Mot. for Summ. J. [Doc. No. 42] ("Def.'s Opp.") at 2.) Defendant argues that its decision to deny the additional $400,000 in life insurance benefits is entitled to deference under an abuse of discretion standard. (See Def.'s Mem. of Law in Supp. of Its Mot. for Summ. J. [Doc. No. 25] ("Def.'s Mem.") at 8–11.) Defendant further argues that its decision was based on a reasonable interpretation of the Policy and, therefore, it did not abuse its discretion in denying those benefits. (See id. at 11–13.) Plaintiff, on the other hand, argues that Defendant is not entitled to a deferential standard of review, but that even under such a standard, Plaintiff is entitled to relief because Defendant's decision was improper under any reasonable reading of the Policy. (See Pl.'s Mem. at 5–19.)

### A.   Standard of Review (Count III)

The parties dispute the appropriate standard of review to be applied in this case. As a general matter, "[w]hen an ERISA plan provides a plan administrator with discretion to construe the terms of the plan"—as the Policy does in this case—"the court should review the administrator's interpretation under an abuse of discretion standard." Jones v. ReliaStar Life Ins. Co., 615 F.3d 941, 944 (8th Cir. 2010) (citing Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)). However, where a conflict of interest

exists—such as when an insurance company both determines eligibility for benefits and pays the benefits out of its own pocket—"a reviewing court should consider that conflict as a factor in determining whether the plan administrator has abused its discretion in denying benefits." Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008). The U.S. Supreme Court explained in Metropolitan Life Insurance Co. v. Glenn that "the significance of the factor will depend upon the circumstances of the particular case." Id. Thus:

> any one factor will act as a tiebreaker when the other factors are closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's inherent or case-specific importance. The conflict of interest . . . should prove more important (perhaps of great importance) where circumstances suggest a higher likelihood that it affected the benefits decision, including, but not limited to, cases where an insurance company administrator has a history of biased claims administration. It should prove less important (perhaps to the vanishing point) where the administrator has taken active steps to reduce potential bias and to promote accuracy, for example, by walling off claims administrators from those interested in firm finances, or by imposing management checks that penalize inaccurate decisionmaking irrespective of whom the inaccuracy benefits.

Id. at 117 (citations omitted).

Here, Plaintiff argues that Defendant's decision is not entitled to any deference because Defendant was operating under a conflict of interest that "goes beyond its dual role as claims payer and claims decider and crosses the boundary to actual bias." (Pl.'s Mem. at 15.) Plaintiff points to his previous attempt to compel the production of emails between Defendant's attorneys and the employees who reviewed Plaintiff's claim. (Id.) Plaintiff sought production pursuant to the fiduciary exception to the attorney-client privilege, under which a plan must make available communications with an attorney if

those communications pertain to plan administration rather than to legal advice for the fiduciary's benefit. (Id. at 16 (citing Bland v. Fiatallis N. Am., Inc., 401 F.3d 779, 787 (7th Cir. 2005); United States v. Mett, 178 F.3d 1058, 1063 (9th Cir. 1999)).) According to Plaintiff, the communications at issue occurred while Defendant was considering Plaintiff's claim, but Defendant opposed the motion to compel because an "adversarial relationship had already developed." (Id.) Although Plaintiff did not appeal the Magistrate Judge's finding that the fiduciary exception to the attorney-client privilege did not apply, he argues that "[Defendant] cannot be permitted to, on the one hand, deny a claim based on undisclosed legal advice intended to advance [Defendant's] self-interest, as opposed to assisting in the performance of its fiduciary duty, and on the other hand claim deference for the result of a process that was, according to [Defendant], adversarial from the very beginning." (Pl.'s Reply Mem. in Supp. of Mot. for Summ. J. [Doc. No. 46] ("Pl.'s Reply") at 3.) Moreover, Plaintiff argues, Defendant admits that it sought legal advice because the only issue is a legal one—i.e., interpretation of the Policy language. (Pl.'s Mem. in Opp. to Def.'s Mot. for Summ. J. [Doc. No. 43] ("Pl.'s Opp." ) at 3.) Thus, rather than taking steps to reduce potential bias by walling off claims administrators from those interested in firm finances, "the protect and defend function was not separated from the claims function." (Id. at 6.)

In addition, Plaintiff briefly argues that Defendant's adversarial relationship with Plaintiff and its withholding of documents deprived Plaintiff of the requisite "full and fair review" of the claim because he was not provided with all of the information relied upon by the decisionmaker. (See Pl.'s Mem. at 18–19; Pl.'s Opp. at 7–9.) Similar to his

argument above, Plaintiff asserts that Defendant "cannot claim that it provided a full and fair review when documents clearly relevant under the applicable regulations were not provided, and at the same time lay claim to a deferential standard of review of a decision flawed by its failure to provide those same documents."  (Id. at 9.)

Defendant, on the other hand, argues that it is entitled to an unaltered abuse of discretion standard.  (See Def.'s Mem. at 10–11.)  Defendant asserts that the conflict of interest factor has little significance because this is not a "close case," (id. at 11), and that Plaintiff's argument that exercising the attorney-client privilege indicates bias "is the equivalent of challenging the Magistrate's application of a valid evidentiary privilege," (Def.'s Reply Mem. in Supp. of Its Mot. for Summ. J. [Doc. No. 45] ("Def.'s Reply") at 2).  In addition, Defendant argues that the fact that it sought the privileged advice of counsel "does not suggest that in-house counsel and the claims analyst are conspiring to adopt a self-serving interpretation."  (Id. at 2–3.)  Rather, according to Defendant, it indicates that the analyst was attempting "to reach the correct decision."  (Id. at 3.) Defendant asserts that, under Plaintiff's theory, Defendant would be presumed to act with bias even if the claim decision was favorable to the beneficiary, and "the deference afforded plan administrators like [Defendant] could be routinely circumvented by claimants who engage attorneys during claim administration to threaten litigation."  (Id.) Finally, Defendant argues that even if its in-house counsel made the benefits decision, the

review of that decision is based on the reasons set forth in the denial letters, to which Plaintiff had access.[2]   (Id. at 4.)

The Court finds that the conflict of interest factor should not be accorded additional weight under the abuse of discretion standard in this case.   There is no evidence in the record that Defendant has a history of biased claims administration, and although Plaintiff urges the Court to find evidence of actual bias—warranting removal of all deference—by virtue of Defendant's assertion of the attorney-client privilege over documents created during the claims administration process, the Court respectfully declines to do so.   One of the reasons that the U.S. Supreme Court in Glenn determined that a conflict of interest should merely be one factor considered under the abuse of discretion standard, rather than cause for changing the standard of review altogether, was that it did not want to "adopt[] a rule that in practice could bring about near universal review by judges de novo—i.e., without deference—of the lion's share of ERISA plan claims denials."   554 U.S. at 116. Because an ERISA fiduciary is entitled to seek the advice of counsel (and, accordingly, to

---

[2]      Count III of Plaintiff's Complaint states:

Plaintiff is entitled to de novo review of [Defendant's] decision denying its claim for benefits.   Among other things, Defendant failed to respond to Plaintiff's appeal of the denied benefit claim within the time limitations provided under the Policy and under the applicable Department of Labor Regulations.   For this and other reasons, Plaintiff is entitled to de novo review by this Court rather than review under a more deferential standard, such as the abuse of discretion standard of review.

(Compl. ¶ 27.)   Neither party's motion papers address Defendant's alleged failure to provide a timely response to Plaintiff's appeal of the denial of benefits.   Therefore, the Court declines to address that argument, as well.

withhold documents under the attorney-client privilege) when a beneficiary threatens

litigation, see Wachtel v. Health Net, Inc., 482 F.3d 225, 231–34 (3d Cir. 2007), the

deference afforded plan administrators could be routinely circumvented in practice by

claimants who engage counsel and threaten litigation during the claims administration

process.  Such an outcome would be contrary to Supreme Court authority.

In addition, the Magistrate Judge in this case determined that the fiduciary

exception to the attorney-client privilege does not apply to the documents withheld by

Defendant, and Plaintiff did not appeal his ruling.  This Court must, therefore, assume

that the documents at issue did not relate to the administration of Plaintiff's claim.  Given

that assumption, the Court finds that Plaintiff received all of the documents to which he

was entitled for a full and fair review.

### B.      Claim for Benefits (Count I)

The parties also dispute the reasonableness of Defendant's interpretation of the

Policy language.  "Under the abuse of discretion standard, the court must affirm the plan

administrator's interpretation of the plan unless it is arbitrary and capricious."  Manning

v. Am. Republic Ins. Co., 604 F.3d 1030, 1038 (8th Cir. 2010) (citation omitted).  This

determination is based on whether the administrator's decision was "reasonable" and

requires consideration of the five factors announced by the Eighth Circuit in Finley v.

Special Agents Mutual Benefit Ass'n:

> [1] whether their interpretation is consistent with the goals of the Plan,
> [2] whether their interpretation renders any language in the Plan
> meaningless or internally inconsistent, [3] whether their interpretation
> conflicts with the substantive or procedural requirements of the ERISA
> statute, [4] whether they have interpreted the words at issue consistently,

and [5] whether their interpretation is contrary to the clear language of the Plan.

957 F.2d 617, 621 (8th Cir. 1992) (citations omitted). "Any reasonable decision will stand, even if the court would interpret the language differently as an original matter." Manning, 604 F.3d at 1038 (citations omitted).

> As discussed above, the Active Work provisions state:
>
> If you are incapable of Active Work because of Sickness, Injury or Pregnancy on the day before the scheduled effective date of your insurance or an increase in your insurance, your insurance or increase will not become effective until the day after you complete one full day of Active Work as an eligible Member.
>
> Active Work and Actively At Work mean performing the material duties of your own occupation at your Employer's usual place of business. . . .

(Haines Aff., Ex. A, at 28–29.) And, a person qualifies as a "Member" if he or she is "[r]egularly working at least 20 hours each week." (Id. at 10.) Under Defendant's interpretation of these terms, "Ms. Olsen ceased to be a Member on August 21, 2010, given that she no longer regularly worked 20 hours each week." (Id. at 52.) Plaintiff argues that Defendant's decision "cannot be sustained on any reasonable reading of the applicable Policy provision."[3] (Pl.'s Mem. at 5.)

The Court must respectfully disagree with Plaintiff. Although the Court, too, may have interpreted these terms differently, it must affirm the administrator's decision "if a

---

[3]    Defendant also disputes whether Ms. Olsen engaged in "one full day of Active Work" after January 1, 2011, arguing that her attendance at the Strategic Planning Committee meetings did not qualify as "performing the material duties of [her] occupation." (Def.'s Opp. at 6.) At most, this argument creates a fact issue. However, because the Court finds that Defendant is otherwise entitled to summary judgment, the Court will not address that issue.

reasonable person <u>could</u> have reached a similar decision." <u>Hutchins v. Champion Int'l</u> <u>Corp.</u>, 110 F.3d 1341, 1344 (8th Cir. 1997) (citation and internal quotation marks omitted). Based on an analysis of the <u>Finley</u> factors, the Court finds that standard is met. Because "significant weight should be given to . . . a misinterpretation of unambiguous language in a plan," the Court will analyze the fifth factor first. <u>Lickteig v. Bus. Men's Assurance</u> <u>Co. of Am.</u>, 61 F.3d 579, 585 (8th Cir. 1995) (citing <u>Lockhart v. United Mine Workers of</u> <u>Am. 1974 Pension Trust</u>, 5 F.3d 74, 78 (4th Cir. 1993)).

### 1. Contrary to plan language

Plaintiff argues that the phrase "regularly working at least 20 hours each week" must be interpreted to refer to an employee's status as a full-time worker in order to comport with the plain language of the Policy. (Pl.'s Mem. at 12.) Plaintiff contends that the phrase "regularly working" is in the present tense and, thus, whether an individual is a "Member" on a given day "turns on a point in time snapshot" on that date and not on the number of hours the employee worked in the past or will work in the future. (<u>Id.</u> at 7, 13.) Moreover, the Active Work provision assumes that an individual was not working when coverage would otherwise have been effective, and so it would not make sense to look back at the employee's work history to determine if she qualified. (<u>Id.</u> at 7–8.) Finally, Plaintiff argues that, under Defendant's interpretation, there is no way to determine how many 20-hour weeks an employee must complete in order to be considered "regularly working." (Pl.'s Opp. at 11–12.)

Plaintiff asserts that Defendant's interpretation of the Policy suffers from the same flaws as the insurance policy at issue in <u>Granite v. Guardian Life Insurance Co. of America</u>, which provided:

> An employee must be actively at work, and working his or her regular number of hours, on the date his or her coverage is scheduled to start. And he or she must have met all of the conditions of eligibility which apply to him or her. If an employee is not actively at work on his or her scheduled effective date, we will postpone the start of his or her coverage until he or she returns to active full-time work.
>
> Sometimes a scheduled effective date is not a regularly scheduled work day. But an employee's coverage will start on that date if he or she was actively at work, and working his or her regular number of hours, on his or her last regularly scheduled work day.

544 F. Supp. 2d 833, 835 (D. Minn. 2008) (citation omitted). One condition of eligibility was that the individual had to be an "active full-time employee." <u>Id.</u> at 844. Under the policy, "full-time" meant that "the employee regularly works at least the number of hours in the normal work week set by the employer (but not less than 32 hours per week) at his employer's place of business." <u>Id.</u> at 835 (citation omitted). According to the defendant, a new employee did not satisfy the "regularly works at least 32 hours per week" provision until she actually worked a 32-hour week. <u>Id.</u> at 844.

The court determined that the defendant's interpretation was unreasonable. <u>Id.</u> at 847. First, it concluded that one 32-hour week would not satisfy the standard because "regularly works" would require working more than one week. <u>Id.</u> at 844. Second, the court found that, under the defendant's interpretation, the policy language would be meaningless with regard to all typical new employees (i.e., new employees whose insurance is scheduled to start on or before their first day of work) because they would

16

never have worked a 32-hour week by the time their insurance was scheduled to start.  Id. at 845.  Third, the court found that use of "works" in the present tense indicated that it was the employee's full-time status, and not past conduct, that was relevant.  Id. at 846.

Defendant disputes Plaintiff's reliance on Granite and argues that Defendant's interpretation of the Policy is consistent with the plain language, which nowhere refers to "full-time status."  (See Def.'s Reply at 5–7; Def.'s Opp. at 7–10.)  Defendant asserts that its interpretation does not require both one full day of work and one full week of work, but rather a consideration of whether the employee worked on a regular basis prior to taking leave.  (See Def.'s Reply at 5–6; Def.'s Opp. at 7–8.)  Defendant points to the dictionary definition of "regularly" ("in a regular manner; on a regular basis"), and argues that "the inquiry is whether, prior to the interruption preceding the return to work, the employee was 'regularly working,'" as opposed to working sporadically.  (Def.'s Reply at 5–6.)  According to Defendant, it was reasonable to conclude that, while an employee who returns from a "limited period of absence" may still be characterized as "regularly working" if he was doing so prior to the absence, an employee who returns after "an extended period of disability" may not.  (Id.)  Finally, Defendant argues that it would be the decision-maker as to the number of 20-hour weeks that a person must work to be considered "regularly working" (as it is for other claims administration issues), but that the question is not relevant here because Plaintiff could not be considered to be regularly working 20 hours each week under any interpretation.  (See id. at 6–7; Def.'s Opp. at 8.)

While the Court does not agree that Defendant's interpretation of the Policy language at issue is the best, or even preferable, interpretation, the Court does find that it

comports with the Policy's plain language.  See Hutchins, 110 F.3d at 1344 ("Under an abuse of discretion standard [the court does] not search for the best or preferable interpretation of a plan term:  it is sufficient if the [plan administrator's] interpretation is consistent with a commonly accepted definition.").  As Defendant notes, the Policy does not use the term "full-time" to describe the employee's required working condition. Rather, the Policy on its face requires that an employee be "regularly working 20 hours each week," which—applying the dictionary definition—could plausibly require a look at the employee's recent work history to determine whether the employee is working 20 hours each week on a regular basis, or on a sporadic basis.  Although a more specific term, such as "full-time," may have been desirable, that was not the term chosen, and the Court cannot re-write the Policy.  Moreover, while it may not be clear how many 20-hour weeks an employee must work to be considered "regularly working," that ambiguity does not render Defendant's interpretation contrary to the Policy language.

In addition, the Court finds that Granite is not dispositive.  The proposed interpretation of the policy language at issue in Granite was sufficiently different than the interpretation proposed by Defendant in this case.  Most notably, according to the defendant in Granite, a "regularly works at least 32 hours per week" provision required an employee to work one 32-hour week before being entitled to benefits.  That specific interpretation was held to be arbitrary because there was no way to reconcile "regularly" with "one."  Here, however, Defendant's interpretation can be reconciled with the plain language.

## 2.      Consistent with plan goals

Relative to the first <u>Finley</u> factor, Plaintiff argues that Defendant's interpretation is inconsistent with the goals of the plan, which were to provide financial security for an employee's family in the event of the employee's death, provide increased coverage for shareholders, and distinguish between full-time and part-time employees.  (Pl.'s Opp. at 16.)  In contrast, Defendant argues that the goals of the plan were to provide increases in coverage to eligible employees, not to all employees.  (Def.'s Reply at 9.)

The goals of the plan do not appear to be listed in the Policy.  However, while the Policy—like any insurance plan—certainly must be assumed to have as one goal the provision of financial security to an employee's family in the event of the employee's death, that benefit is limited to those who qualify under the terms of the plan (which do not explicitly distinguish between full-time and part-time employees).  Otherwise, the plan would simply state that it applies to all employees.  Thus, although the Amendment to the Policy increased coverage for shareholders, it did so only for those who met the terms of the Policy.  Thus, the fact that a shareholder was determined not to be eligible for the increased benefits is not inherently inconsistent with the Policy's goals.

## 3.      Effect on plan language

As for the second factor, Plaintiff argues that Defendant's interpretation renders the "one full day of Active Work" provision meaningless by requiring an individual to have a full week of work—i.e., not just one day of work, but five—and that, instead, the "regularly working at least 20 hours each week" must refer to full-time status.  (<u>See</u> Pl.'s Opp. at 11; Pl.'s Mem. at 8.)  Plaintiff also contends that there is no inconsistency with

Ms. Olsen receiving a disability waiver of premium as well as the increase in life insurance benefits because she retained her status as a full-time employee. (Pl.'s Opp. at 14.) Rather, according to Plaintiff, the Active Work provisions contemplate this exact situation. (Id.) In fact, Plaintiff points out that both the Waiver of Premium and Active Work provisions apply in situations where an employee is unable to work due to sickness, injury, or pregnancy, and the Active Work provisions do not measure the severity of those conditions. (Pl.'s Reply at 9–10.) Moreover, Plaintiff argues that whether an individual is entitled to the waiver of premium benefit has nothing to do with whether that individual is entitled to an increase in life insurance benefits under a separate part of the Policy. (Id. at 8.) Finally, Plaintiff notes that the Waiver of Premium language states that the "'amount of insurance eligible for Waiver of Premium is the amount in effect on the day before you become Totally Disabled,'" which is $100,000 in this case. (Id. at 9 (quoting Haines Aff., Ex. A, at 31).) According to Plaintiff:

> [i]t is significant that the language limits the insurance subject to Waiver of Premium to the amount in effect at the time the employee is determined to be Totally Disabled. There would be no reason for the limitation if it were impossible, as [Defendant] claims, to be entitled to any increase in basic life coverage once [Defendant] has determined the employee is Totally Disabled. If a disability determination for Waiver of Premium purposes precluded any future increase in the amount of insurance—which is [Defendant's] argument—Policy language limiting the waiver to the amount in effect at the commencement of the disability would not be necessary.

(Id.)

   To the contrary, Defendant asserts that its definition of "Member" is not inconsistent with the Active Work provisions because it does not require an employee to

complete five days of work, but rather simply looks to the nature of the employee's work history.  (Def.'s Reply at 5–6.)  Moreover, Defendant argues, if an individual is receiving disability benefits due to an inability to perform the duties of her occupation, it would be inconsistent to find that she satisfies the Active Work provisions, which require that an individual be able to perform those duties.  (See id. at 8.)  According to Defendant, the terms "sickness," "injury," and "pregnancy" in the Active Work provisions "do not denote disability" whereas the Waiver of Premium provision requires a person to be "totally disabled"—i.e., "'unable to perform with reasonable continuity'" as a result of those conditions.  (Def.'s Opp. at 5 (quoting Haines Aff., Ex. A, at 30).)

As discussed above, Defendant's interpretation of "Member" is not contrary to the clear language of the Policy.  And, as articulated by Defendant, "regularly working at least 20 hours per week" does not necessarily require both one day of work and five days of work, nor does it necessarily refer to "full-time" status.  Therefore, Defendant's interpretation does not render the "one full day of Active Work" provision meaningless.  In addition, contrary to Plaintiff's argument that the Active Work provisions do not measure the severity of the "sickness," "injury," or "pregnancy" that prevented an employee from working, those provisions do require that the employee be "regularly working."  On the other hand, the Waiver of Premium provision requires that the employee be unable to work with "reasonable continuity."  Therefore, while as a general matter there should be no inconsistency between an individual's ability to receive both disability and increased life insurance benefits, the language in this Policy can be interpreted to preclude an individual's ability to receive both.  As Defendant argues, an

individual who is receiving the Waiver of Premium benefit is doing so because she is "totally disabled," or "unable to perform [her job] with reasonable continuity."  A reasonable person could find that, if an individual satisfies that condition, the same individual would not be able to satisfy the Active Work requirement of being able to "regularly work[] at least 20 hours each week."  And, although the waiver of premium benefit is separate from the increased life insurance benefit, this Finley factor does not limit the Court's review of the Policy language to only the specific provision at issue. Rather, it directs the Court to determine whether a proposed interpretation "renders any language in the Plan meaningless or internally inconsistent."

Finally, Plaintiff's argument that the limit on the Waiver of Premium benefit would be unnecessary unless the employee could be eligible for increased life insurance benefits while totally disabled—although compelling on its face—assumes too much. Not every increase in life insurance benefits must be subject to the Active Work provisions.  The Amendment increasing the basic life insurance coverage in this case, for example, could simply have stated that it was effective on a certain date as to all employees.  Without the Active Work provision requirement, an individual in Plaintiff's situation would—assuming there were no other applicable restrictions—be eligible for the increased life insurance but not for the waiver of premiums on the increased amount. Therefore, because the Waiver of Premium provision could be applied as written in other contexts, the Court cannot find that its limitation language is necessarily rendered meaningless by Defendant's interpretation of the Active Work provision.

### 4. Conflicts with ERISA

In regard to the third factor, Plaintiff asserts that Defendant's interpretation of the Policy language conflicts with ERISA's purpose of ensuring "that benefit commitments are delivered to the intended beneficiaries." (Pl.'s Opp. at 16.) Plaintiff also argues that Defendant's denial of the claim was the product of bias and so conflicts with ERISA's requirement of a full and fair review. (Id.) In response, Defendant argues that ERISA is intended to ensure that employees receive the benefits they actually earned and to provide for fair and prompt enforcement of rights under a plan. (Def.'s Reply at 10.) According to Defendant, its exercise of discretionary authority to make the eligibility determination served those purposes. (Id.)

As discussed above, the Court did not find that Plaintiff was deprived of documents to which he was entitled for a full and fair review under ERISA. Moreover, there appears to be no dispute among the parties that ERISA seeks to ensure delivery of benefits only to "intended beneficiaries." Thus, Defendant's determination that a particular individual was not an intended beneficiary is not inherently inconsistent with ERISA.

### 5. Consistent interpretation

Under the fourth factor, Plaintiff argues that there is no reason to believe Defendant applies this interpretation consistently because that would result in, for example, employees who work irregular hours losing coverage and new hires not being covered. (Pl.'s Opp. at 17.) Defendant does not address this factor, however, it appears that Defendant consistently proffered the same interpretation throughout the claims

administration process.  And, as Plaintiff notes, there is no evidence that Defendant does

not, in fact, apply its interpretation consistently in other cases.  (See id.)

Based on its consideration of the Finley factors, the Court determines that

Defendant's interpretation of the Policy was reasonable.  Accordingly, under the abuse of

discretion standard, the Court must affirm that interpretation.

### C.        Breach of Fiduciary Duty (Count II)

The parties do not directly address Count II of Plaintiff's Complaint in their motion

papers.  In that Count, Plaintiff alleges that Defendant breached its fiduciary duties "[b]y

failing and refusing to pay benefits to Plaintiff."  (Compl. ¶ 23.)  Because the Court has

determined that Defendant's interpretation of the Policy was reasonable and that Defendant

was not required by the Policy's terms—so interpreted—to pay those benefits, Count II

fails.

**THEREFORE, IT IS HEREBY ORDERED THAT:**

1.        Defendant's Motion for Summary Judgment [Doc. No. 30] is **GRANTED**; and

2.        Plaintiff's Motion for Summary Judgment [Doc. No. 36] is **DENIED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**


Dated:  August 20, 2014                          s/Susan Richard Nelson
                                                 SUSAN RICHARD NELSON
                                                 United States District Judge